UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

YONIS ALI,

Case No. 17-CV-5334 (PJS/KMM)

Petitioner,

v.

ORDER

JEFFERSON BEAUREGARD SESSIONS
III, Attorney General; ELAINE C. DUKE,
Acting Secretary, Department of
Homeland Security; THOMAS HOMAN,
Director, Immigration and Customs
Enforcement; SCOTT BANIECKE,
Director, St. Paul Field Office,
Immigration and Customs Enforcement;
and BRIAN ACUNA, Director, New
Orleans Field Office, Immigration and
Customs Enforcement,

Respondents.

---

Kimberly K. Hunter and John R. Bruning, KIM HUNTER LAW, P.L.L.C.,
for petitioner.

Ana H. Voss and Ann M. Bildtsen, UNITED STATES ATTORNEY'S
OFFICE, for respondents.

Petitioner Yonis Ali is a citizen of Somalia who entered the United States in 1995

and was granted lawful permanent resident status as the spouse of a refugee.  In 2010,

Ali was ordered removed from the United States after the Board of Immigration

Appeals ("BIA") determined that he had committed fraud in the course of applying for

refugee status.  Ali was not immediately removed from the United States, however,

because Somalia would not agree to accept his return. Instead, Ali was allowed to remain free under an order of supervision.

Ali was taken into custody by Immigration and Customs Enforcement ("ICE") in September or October 2017 after Somalia agreed to accept his return. After being taken into custody, Ali filed a motion with the BIA to reopen his case and stay his removal. Ali also filed a habeas action in this Court and moved for a stay of removal and a temporary restraining order ("TRO"). ECF No. 3 ("TRO Mot."). That motion is now before the Court. Because the government received notice of the motion and had the opportunity to respond, the Court will treat the motion as a motion for a preliminary injunction. *See* Fed. R. Civ. P. 65.

In opposing Ali's motion, the government argues only that this Court does not have jurisdiction over Ali's habeas action. *See* ECF No. 8. Because the Court finds that it does, in fact, have jurisdiction over one of Ali's habeas claims—and because the government has made no other argument in opposing Ali's motion—the Court grants Ali's motion and enjoins respondents from removing him from the United States until the BIA issues a decision on his motion to reopen.

## I.  BACKGROUND

Ali is a citizen of Somalia. TRO Mot., Ex. I ("IJ Decision") at 2. On or about June 20, 1995, Ali entered the United States under the name "Hussein Mohamud,"

purportedly as the spouse of a refugee. *Id.* Ali was later granted lawful permanent resident status with a retroactive date of June 20, 1995. *Id.*

In 2007, the Department of Homeland Security ("DHS") began removal proceedings against Ali after discovering that he had committed fraud during his naturalization process. *Id.* at 2. While the removal proceedings were still pending, Ali applied for asylum, for withholding of removal, and for relief under the Convention Against Torture. *Id.* at 2-5. An immigration judge ("IJ") ordered Ali removed on June 10, 2010. *Id.* at 13. The IJ found that Ali was "not credible" because of the "numerous inconsistencies within his testimony and with prior statements and evidence submitted by both parties." *Id.* at 7. The IJ was thus "unable to determine the name, birth date, marital status, or clan membership of Mr. Ali." *Id.* at 11. The IJ also made the alternative finding that Ali had failed to show that he suffered "past persecution" or that he had a "'well-founded fear' of future persecution" in Somalia. *Id.* at 12.

On November 16, 2011, the BIA dismissed Ali's appeal. TRO Mot., Ex. I ("BIA Decision") at 1. The Eighth Circuit denied Ali's petition for review in 2012. *Ali v. Holder*, 686 F.3d 534 (8th Cir. 2012). At that point, Ali had been ordered removed, and he had exhausted his administrative and judicial remedies. But Somalia would not

agree to accept Ali's return, so ICE permitted Ali to continue residing in Minnesota subject to an order of supervision. ECF No. 13 ("Mem. ISO TRO Mot.") at 2-3.

In September or October 2017, after ICE learned that Somalia had decided to accept Ali's return, ICE took Ali into custody. *See* ECF No. 8 at 4; ECF No. 9 ¶ 13; ECF No. 13 at 2. In late November 2017, ICE transported Ali from Minnesota to Louisiana, in anticipation of removing him to Somalia. ECF No. 9 ¶ 15. On December 1, 2017, Ali filed a motion with the BIA to reopen his case and stay removal. TRO Mot., Exs. F-G, J. Ali seeks to establish that changed conditions in Somalia (namely the rise of Al-Shabaab and its persecution of "Westernized" Somalis such as Ali) warrant the reopening of his immigration case and entitle him to remain in the United States. *See id.* Both motions remain undecided.

Also on December 1, 2017, Ali filed in this Court a petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. Ali argues that he "cannot be removed to Somalia without being afforded a process to determine whether, based on current conditions and circumstances, the danger he would face entitles [him] to protection from removal." *Id.* ¶ 10.

Ali now moves the Court to enjoin respondents from removing him to Somalia until the BIA rules on his pending motion to reopen. He argues that failure to stay his removal will "deprive him of due process of law and violate U.S. law." Mem. ISO TRO

Mot. at 3.  Specifically, Ali argues (among other things) that, if he is deported, he will be deprived of his statutory right to a decision on his motion to reopen because of the "departure bar"—a regulation under which Ali's motion to reopen will be deemed withdrawn as soon as he is deported.  *See* 8 C.F.R. § 1003.23(b)(1).

## II.  DISCUSSION

Ali's habeas action is one of five that were filed in this District on December 1, 2017, all on behalf of petitioners whose removal to Somalia was imminent.  In all five cases, the petitioner moved for a TRO to block his removal, and in all five cases, the government opposed the motion by arguing that the Court did not have jurisdiction over the habeas action.  In four of the cases, judges of this District have agreed with the government and denied the petitioner's motion for a TRO.[1]  This Court agrees with those decisions on all issues save one, but that disagreement dictates a different result.

To begin, this Court agrees that, on its face, the jurisdiction-stripping provision codified at 8 U.S.C. § 1252(g) deprives this Court of jurisdiction over Ali's habeas petition.  Section 1252(g) provides that:

> Except as provided in this section and notwithstanding any
> other provision of law (statutory or nonstatutory), including

---

[1] *Adan v. Sessions*, No. 17-CV-5328 (MJD/BRT), 2017 WL 6001740 (D. Minn. Dec. 4, 2017); *Mohamed v. Sessions*, No. 17-CV-5331 (DSD/BRT), 2017 WL 6021293 (D. Minn. Dec. 5, 2017); *Ibrahim v. Sessions*, No. 17-CV-5333 (DSD/TNL), 2017 WL 6021314 (D. Minn. Dec. 5, 2017); and *Sheikh v. Sessions*, No. 17-CV-5330 (JNE/HB), 2017 WL 6033674 (D. Minn. Dec. 6, 2017).

-5-

section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Ali's claim clearly falls within the ambit of § 1252(g), as Ali's claim clearly "aris[es] from" the Secretary's decision to "execute [the] removal order[]" by detaining Ali so that he can be removed to Somalia. *See Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) ("A claim that is 'connected directly and immediately' to a decision to execute a removal order arises from that decision." (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999))). But for the decision of the Secretary to execute Ali's removal order, there would be no threat to his right to receive a decision on his motion to reopen his immigration proceedings, and there would be no need for him to seek relief from this Court.

This Court also agrees that, insofar as § 1252(g) deprives this Court of jurisdiction over Ali's habeas petition, the statute does not violate the Suspension Clause of the United States Constitution. *See* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."). The Supreme Court has held that Congress may deprive federal courts of habeas jurisdiction without running afoul of the Suspension

Clause as long as Congress offers "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381 (1977). The Eighth Circuit (and every other circuit to have addressed the question) has held that the process provided by Congress through the REAL ID Act, Pub.L. No. 10-13, 119 Stat. 231 (2005), is "as broad in scope as a habeas petition" and "an adequate and effective substitute to test the legality of a person's detention." *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (citing *Swain*, 430 U.S. at 381-82).

Ali contends, however, that under the particular facts of his case, the alternative process provided by Congress is inadequate and ineffective. Ali argues (and the government does not dispute) that he has a statutory right to a decision from the BIA on his motion to reopen.[2] Ali further argues that, if he is removed from the United States before the BIA issues a decision on his motion to reopen, he will never get the decision to which he is entitled because of the "departure bar" found in 8 C.F.R. § 1003.2(d). That regulation provides:

---

[2] *See Devitri v. Cronen*, No. CV 17-11842-PBS, 2017 WL 5707528, at *4 (D. Mass. Nov. 27, 2017) ("The Supreme Court has characterized [8 U.S.C. § 1229a(c)(7)] as creating an absolute, non-negotiable right: '[E]very alien ordered removed from the United States has a right to file one motion to reopen his or her removal proceedings.'" (quoting *Dada v. Mukasey*, 554 U.S. 1, 4-5 (2008))).

-7-

> Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

If Ali is deported, then, his "motion to reopen will be deemed withdrawn." *Dada*, 554 U.S. at 18. Thus, Ali argues, he does not have an "adequate and effective" alternative to habeas relief; he can ask the BIA to change its mind about deporting him but, if the BIA refuses, he will not have recourse to any judge or other neutral decisionmaker. *See Villalobos v. Holder*, 417 F. App'x 610 (8th Cir. 2011) (per curiam) ("We lack jurisdiction to review the BIA's denial of a stay because it is not a final order of removal . . . .").

The problem with Ali's argument is that every circuit to have considered the question—and that is virtually every circuit—has found that the departure bar is invalid. *See Toor v. Lynch*, 789 F.3d 1055, 1060 (9th Cir. 2015) (collecting cases). The Eighth Circuit (perhaps alone among the circuits) has not yet ruled on the validity of the departure bar, but in light of the number and persuasiveness of the decisions from the other circuits, the Court finds that it is highly unlikely that the Eighth Circuit will permit the BIA to apply the departure bar in Ali's case. Ali will get a decision on his motion to reopen—and he will be able to seek judicial review of any adverse decision— whether he is deported or not.[3] Therefore, Ali has failed to establish that the REAL ID

---

[3]That fact distinguishes this case from *Devitri*, 2017 WL 5707528, and *Hamama v. Adducci*, 258 F. Supp. 3d 828 (E.D. Mich. 2017), in which courts enjoined the removal of

procedures are inadequate or ineffective to safeguard his right to a decision on his motion to reopen.

That would be the end of the matter save for one thing: In *Jama v. Immigration & Naturalization Service*, 329 F.3d 630 (2003), the Eighth Circuit carved out an exception to the jurisdiction-stripping provision in 8 U.S.C. § 1252(g)—an exception that appears to apply to one of Ali's habeas claims. The petitioner in *Jama* was (like Ali) a Somali citizen who, after being ordered removed from the United States, filed a habeas petition and asked the district court to block his removal. *Id.* at 631. The district court found—and the Eighth Circuit agreed—that it had jurisdiction over the habeas action, even though the petitioner's claim arose from a decision by the Attorney General to "execute removal orders," and even though § 1252(g) provided that "no court shall have jurisdiction to hear" any such claim. The Eighth Circuit explained:

> Mr. Jama . . . is not objecting to an unfavorable discretionary decision or action to execute the removal order. *Cf. Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-85, 487 (1999). He challenges, rather, the Attorney General's construction of a statute; specifically, the Attorney General's legal conclusion that 8 U.S.C. § 1231(b)(2)(E)(iv) authorizes the INS to remove Mr. Jama to Somalia without first establishing that Somalia will accept his return. Our role here (and the role of the district court below) is not to second-guess the Attorney General's exercise of his discretion; it is to address a purely legal question of

---

aliens to allow those aliens to file motions to reopen with the BIA. Here, Ali has already filed such a motion.

statutory construction. . . . We believe, therefore, that Mr.
Jama's question is simply outside the scope of the
jurisdiction-stripping provision of § 1252(g).

*Id.* at 632.

*Jama*'s holding appeared to rest on two pillars.  First, the Eighth Circuit—like a
couple of other circuits—seemed to interpret *Reno* to hold that § 1252(g)'s jurisdiction
bar applied only to "discretionary" decisions.  *See, e.g., Chmakov v. Blackman*, 266 F.3d
210, 215 (3d Cir. 2001) ("[Section 1252(g)] limits the power of federal courts to review
the discretionary decisions of the Attorney General to commence proceedings,
adjudicate cases, or execute removal orders.").  Second, the Eighth Circuit noted that
§ 1252(g) as enacted did not explicitly refer to habeas actions and said that "[a]bsent a
'clear, unambiguous, and express statement of congressional intent' to the contrary, we
have no reason to assume that Congress intended to preclude the district court's habeas
review of a pure question of law such as the one presented by Mr. Jama."  *Jama*, 329
F.3d at 632-33 (quoting *INS v. St. Cyr*, 533 U.S. 289, 314 (2001)).

Up until four months ago, there was reason to doubt the continued viability of
the carve-out created by *Jama*.  *Jama* is an outlier; as best as the Court can tell, no other
circuit has carved out an exception from § 1252(g)'s jurisdictional bar for a habeas claim
presenting only "a purely legal question."  *Id.* at 632.  Moreover, both of *Jama*'s two
pillars have been severely undermined over the years.  First, the majority of

-10-

circuits—including the Eighth Circuit itself—have rejected the notion that § 1252(g) bars

review only of "discretionary" decisions.  The Eighth Circuit explained:

> Lopez Silva urges that *Reno v. American-Arab
> Anti-Discrimination Committee*, 525 U.S. 471 (1999), requires
> us to narrow the scope of § 1252(g) to discretionary decisions
> of the Secretary. . . . In explaining the history of the
> provision, the Court at one point observed that § 1252(g)
> "seems clearly designed to give some measure of protection
> to 'no deferred action' decisions and similar discretionary
> determinations, providing that if they are reviewable at all,
> they at least will not be made the bases for separate rounds
> of judicial intervention outside the streamlined process that
> Congress has designed."  *Id.* at 485.  But this reference to
> discretionary decisions did not say that § 1252(g) applies
> *only* to discretionary decisions, notwithstanding plain
> language that includes no such limitation.

*Silva*, 866 at 940-41.

Second, *Jama*'s concern that § 1252(g) did not explicitly refer to habeas actions

was remedied with the passage of the REAL ID Act in 2005.  At the time that *Jama* was

decided, § 1252(g) provided as follows:

> Except as provided in this section and notwithstanding any
> other provision of law, no court shall have jurisdiction to
> hear any cause or claim by or on behalf of any alien arising
> from the decision or action by the Attorney General to
> commence proceedings, adjudicate cases, or execute removal
> orders against any alien under this Act.

*Hamama v. Adducci*, 258 F. Supp. 3d 828, 834 (E.D. Mich. 2017) (quoting statute).  But the

REAL ID Act amended § 1252(g) so that it now provides as follows:

> Except as provided in this section and notwithstanding any other provision of law *(statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title*, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (amendment emphasized).  Congress does not get much clearer than that.

Notwithstanding these developments, the Eighth Circuit signaled the continued viability of the *Jama* carve-out just four months ago in *Silva*.  866 F.3d at 940-41.  In *Silva*, the plaintiff sued the United States for damages after he had been unlawfully removed to Mexico.  The Eighth Circuit held that § 1252(g) deprived the district court of jurisdiction over the plaintiff's claim because that claim arose from a decision by the Secretary to execute a removal order.  In the course of its discussion of § 1252(g), the Eighth Circuit clarified that *Jama* "did not hold that § 1252(g) applies *only* to claims arising from discretionary decisions."  *Id.* at 941 (emphasis original).  Instead, the Eighth Circuit said, *Jama* "essentially carved out an exception to § 1252(g) for a habeas claim raising a pure question of law[.]"  *Id.*  The Eighth Circuit gave no indication that it questioned the continued viability of this "exception."

In light of *Silva*, this Court is bound to find that § 1252(g) does not deprive it of jurisdiction over a habeas claim that "rais[es] a pure question of law."  *Id.*  And at least

one of the claims made by Ali in his habeas action raises only pure questions of law.

Again, Ali argues:

> First, he and every other alien who has been ordered
> removed from the United States has the right to file and get a
> decision on a motion to reopen his or her removal
> proceedings under 8 U.S.C. § 1229a(c)(7).
>
> Second, he and every other similarly situated alien would be
> deprived of this right without due process of law if he or she
> were to be deported while his or her motion to reopen was
> pending by operation of the departure bar found in 8 C.F.R.
> § 1003.23(b)(1).
>
> And third, because he is in fact being deported while his
> motion to reopen is pending, and because the Eighth Circuit
> has not declared the departure bar invalid, his custody
> violates the Constitution and laws of the United States, and
> therefore he is entitled to habeas relief.

Ali's claim may be right or it may be wrong, but what matters for jurisdictional

purposes is that Ali's claim presents only "pure questions of law."  In addressing this

particular claim on the merits, this Court need not decide anything about whether

conditions in Somalia have changed or whether Ali will be subject to torture in Somalia

or any other factual issue.[4]  Therefore, Ali's claim falls within the "exception to § 1252(g)

for a habeas claim raising a pure question of law."  *Silva*, 866 F.3d at 941.

---

[4]The Court *would* have to resolve factual issues to decide other claims that Ali is
making—such as his claim that his deportation would violate his rights under the
Convention Against Torture—and thus those claims do not fall within the *Jama*
exception to § 1252(g)'s bar on jurisdiction.

-13-

Having satisfied itself that it has jurisdiction over one of Ali's claims, the Court would normally address the merits of that claim. But, as noted, the only argument that the government has made in opposing Ali's motion for an injunction is the argument that § 1252(g) deprives the Court of jurisdiction. The Court will therefore treat Ali's motion as unopposed and invite the government to move to dissolve the injunction if it wishes to address the injunction on the merits.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.  Petitioner Yonis Ali's motion for a temporary restraining order [ECF No. 3]—which the Court construes as a motion for a preliminary injunction—is GRANTED.

2.  Respondents, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, are ENJOINED AND RESTRAINED from removing or causing the removal of petitioner Yonis Ali from the United States until the Board of Immigration Appeals issues a decision on Ali's motion to reopen his immigration proceedings.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 7, 2017                  s/Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge